# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                Case No. 06-CR-65

PETER T. OLSON,

        Defendant.

## RECOMMENDATION AND ORDER RE: DEFENDANT'S MOTION TO SUPPRESS

### I. BACKGROUND

On March 21, 2006, a grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment naming Peter T. Olson ("Olson") as the defendant. The indictment charges that on or about September 8, 2004, Olson knowingly possessed a computer which contained images of minors engaging in sexually explicit conduct, in violation of Title 18 U.S.C. § 2252(a)(4)(B). Olson has entered a plea of not guilty, and his trial is currently scheduled to commence on October 16, 2006 before Chief United States District Judge Rudolph T. Randa.

In accordance with the pretrial briefing schedule issued in this matter, on July 26, 2006, Olson filed a motion to suppress. Specifically, Olson moves the court to suppress "all evidence obtained during, or in connection with, the execution of the search warrant issued by United States Magistrate Judge James R. Sickel on September 1, 2004," as well as any statements resulting from the execution of the illegal search warrant. (Def.'s Br. at 1.) In support of his motion to suppress, Olson argues that (1) the affidavit in support of the warrant did not allege probable cause, (2) the inculpatory

information relied upon to issue the warrant was stale, and (3) the warrant is invalid under *Franks v. Delaware*, 438 U.S. 154 (1978). The defendant's motion to suppress is now fully briefed and is ready for resolution. For the reasons which follow, it will be recommended that the defendant's motion be denied.

## II. DISCUSSION

### A. The Warrant

Whether the search warrant issued by Judge Sickel on September 1, 2004 was supported by probable cause is a question that must be answered by examining the warrant application itself. The affidavit submitted in support of the warrant was signed by Senior Special Agent Steve Kurkowski of the Bureau of Immigration & Customs Enforcement. The following is a summary of the relevant facts set forth in Agent Kurkowski's affidavit:

> In or about February 2003, a federal undercover operation coordinated out of the District of New Jersey revealed that a company called "Regpay," . . . owned and operated various members-only internet websites containing images of what appeared to the federal agents in New Jersey to be real children engaging in pornographic conduct with other children and with adults.

> In or about July and August 2003, federal agents operating in an undercover capacity obtained memberships to, and visited, these members-only websites. These undercover agents confirmed by viewing the images that were on display on the internet and by visiting the sites and purchasing memberships therein that these fee-based websites advertised child pornography, and that they contained child pornography.

> In or about June 2003, [government agents] seized Regpay's customer database. . . . The customer database contained Regpay's records for each customer who purchased access to one of Regpay's child pornography websites. This information included the purchaser's name, home address, credit card number, names of websites purchased, and date(s) of purchase.

> In or about early October 2003, federal agents reviewed Regpay's customer databases, and discovered that Peter Olson was one of Regpay's paying customers.

Case 2:06-cr-00065-RTR   Filed 08/31/06   Page 2 of 21   Document 19

The purchasing information contained on Regpay's customer database for Peter Olson is as follows:

| Customer Name | Customer Address | Website | Purchase Date |
|---|---|---|---|
| Peter Olson, aka ptolson@excel.net | 1131 Union Ave. Sheboygan, WI 53081 | http://tr.allxboys.com $57.90/month | July 20, 2002 (Approved) |
| Peter Olson, aka ptolson@excel.net | 1131 Union Ave. Sheboygan, WI 53081 | http://www.sunshine-boys.com $44.90/month | October 19, 2002 (Not Approved) |
| Peter Olson, aka ptolson@excel.net | 1131 Union Ave. Sheboygan, WI 53081 | http://tr.erectxboys.com $47.90/month | November 10, 2002 (Approved) |
| Peter Olson, aka ptolson@excel.net | 1131 Union Ave. Sheboygan, WI 53081 | http://tr.allxboys.com $57.90/month | November, 13, 2002 (Approved) |

In or about July and August 2003, ICE agents from the ICE Cyber Crimes Center . . . visited all of the above-listed websites, to which Peter Olson had purchased memberships, [and] determined that these websites contained extensive collections of sexually explicit photographic and video images of what appear to be real children posing and/or engaged in pornographic activities with other children.

In July and August 2003, the ICE agents also captured the contents of these websites when they visited the sites. On April 22, 2004, your affiant reviewed the contents of the [] websites that Peter Olson purchased membership to, and confirmed that the vast majority of the images on these websites depicted sexually explicit activities involving minor boys.

According to Regpay records, Olson joined "http://tr.allxboys.com" on or about July 20, 2002, and his membership was approved. On November 13, 2002, Olson joined again, which also was approved.

On July 25, 2003, ICE Special Agent Mitchell Chase-Brown . . .acting in an undercover capacity, purchased a month membership to a website entitled "allxboys" aka "http://tr.allxboys.com." Using this information the agent accessed the website and downloaded images of children engaged in sexually explicit conduct. . . .Contained within the website were numerous pictures of young boys in various poses and states of undress. Specifically, [one] of the images contained in

3

http://tr.allxboys.com [is] described as follows: a photograph taken indoors from a side view. The photo is of one prepubescent male, naked standing in front of black back drop (sheet covering the wall), exposing his erect penis.

According to Regpay records, Olson joined "http://tr.erectboys.com" on or about November 10, 2002, and was approved for membership. On July 21, 2003, ICE Special Agent Michell Chase-Brown . . . purchased a month membership to a website entitled "erectxboys" aka "http://erectxboys.com" aka "www.erectxboys.com."

Using this information the agent accessed the website and downloaded images of children engaged in sexually explicit conduct. . . . Contained within the website were numerous pictures of young boys in various poses and states of undress. Specifically, [one] of the images contained in "erectxboys" . . . [is] described as follows: a photograph taken indoors from a frontal view. The photo is of one prepubescent male, naked, siting on a white sheet on his buttocks. His knees are bent up towards his chest, exposing his penis.

On August 17, 2004, pursuant to a Customs Summons, SBC provided the following account information for telephone number 920-208-3237: The telephone number is listed to Peter Olson, service address 1131 Union Ave., Sheboygan, WI 53081. SBC also provided outgoing Local Call Details for the telephone number 920-208-3237 for the period of April 17, 2004 to July 31, 2004. A review of the records shows that during this period, approximately 630 calls were made to telephone number 920-452-0513. On August 18, 2004, pursuant to a Customs Summons, SBC provided the following subscriber information for telephone number 920-452-0513. The telephone number is listed to EXCELNET. On August 19, 2004, [the affiant] was advised by Mr. Larry Weidig, Excel Net, Inc. that telephone number 920-452-0513 is a local access number for their company for customers accessing the Internet.

Based on [the affiant's] training, experience, and discussions with other law enforcement officers involved in the investigation of child pornography, [he] know[s] that individuals involved in child pornography keep and collect items containing child pornography over long periods of time. Individuals involved in child pornography furthermore use places that they consider to be private (typically their home) to view, download, store, and view their child pornography collections.

(Def.'s Mot, Ex. A., ["Kurkowski Aff."])

4

**B. Probable Cause for Issuance of Search Warrant**

The defendant argues that the search warrant was invalid because the "supporting affidavit provided no probable cause to believe that Olson participated in any criminal activity or that the search would yield evidence of any criminal activity." (Def.'s Br. at 3.) Specifically, the defendant asserts that the affidavit did not allege that the websites Olson joined advertised or contained any child pornography when he was a member in 2002. The government argues that Agent Kurkowski's affidavit established a fair probability that agents would find child pornography on Olson's home computer. (Gov't Br. at 6.)

My duty in reviewing this search warrant is limited. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. *See United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990) *overruling on other grounds recognized by, United States v. Westmoreland*, 240 F.618 7th Cir. 2001). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (internal quotations omitted). "'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'" *United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir. 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

5

Probable cause is a fluid concept turning on the assessment of probabilities in a particular factual context. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." *United States v. Markling*, 7 F.3d 1309, 1317 (7th Cir. 1993). A search warrant may issue "even in the absence of [d]irect evidence linking criminal objects to a particular site." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (internal quotations omitted). "The [judicial officer] to whom the warrant application is directed is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense, and the [judicial officer] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *Id.* (internal quotations omitted).

A judicial preference is to be accorded warrants in those cases where there is a close or marginal showing of probable cause. In reviewing prior probable cause findings made by a judicial officer in issuing a warrant, "great deference is to be accorded to that determination." *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 2002) (stating that "doubtful cases are to be resolved in favor of upholding the warrant"). The Seventh Circuit Court of Appeals has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *Pless*, 982 F.2d at 1124. Indeed, "[a] magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are

6

associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3 780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)).

Turning to the facts of this case, I am persuaded that Judge Sickel had a substantial basis for concluding that, under the totality of the circumstances, there was a fair probability that agents would find evidence of the possession of child pornography on Olson's computer. Indeed, Agent Kurkowski's affidavit established the following: (1) In the latter part of 2002, Olsen purchased month-long memberships in http://www.sunshine-boys.com, http://tr.erectxboys.com and http://tr.allxboys.com (two month-long memberships); (2) In July and August of 2003, agents visited all of the aforementioned websites and determined that the websites contained extensive collections of child pornography; (3) On April 22, 2004, Kurkowski reviewed the contents of the websites that Olson had purchased memberships to, and confirmed that the websites contained child pornography; (4) During a recent three-month period (April 17, 2004 to July 31, 2004), Olson accessed the internet 630 times from his home computer; and (5) Based upon Kurkowski's experience, he believes that individuals involved in child pornography keep and collect items containing child pornography over long periods of time. (Def.'s Mot., Kurkowski Aff. at ¶¶ 22-25, 39-41, 46.)

The defendant seems to argue that because there is no evidence that the websites contained child pornography in 2002, that is, when Olson was a member, there can be no probable cause. Yet, the bottomline is that the inferences are clear. One reasonable inference to be drawn from the facts established in Agent Kurkowski's affidavit is that the websites (specifically, allxboys.com and erectxboys.com) which were found to contain child pornography in July of 2003, also contained child pornography in November of 2002 when Olson was a member of the websites. The competing inference is that when Olson was a member of the websites in 2002, the websites only contained

7

adult pornography, and subsequent to the expiration of Olson's membership, the websites began to feature extensive collections of child pornography. With respect to this competing inference, however, it seems unlikely that a website that contained *only* licit pornography in November of 2002 would subsequently change the nature of its contents to such an extent that in July of 2003 the website featured an *extensive* collection of child pornography without the website also changing its name.

In a similar fashion, the defendant argues that the government had no knowledge of what Olson received from the websites, if anything, and thus, the government has alleged no facts linking Olson to the criminal group of those who possess child pornography. (Def.'s Br. at 7.) Again, however, the competing inferences are clear. If one accepts the reasonable inference that the websites contained child pornography in 2002 when Olson was a member of the websites, one reasonable inference is that Olson downloaded child pornography at that time, and evidence of such possession could be found on Olson's home computer. The competing inference is that Olson was a member of websites which contained child pornography, however, he never downloaded any child pornography.

While the defendant's arguments show that Judge Sickel faced competing inferences as to whether evidence of the possession of child pornography would be found on Olson's home computer, such competing inferences do not defeat Judge Sickel's finding of probable cause. To reiterate, probable cause is a *fair probability* that evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238-39. To be sure, Judge Sickel was not *certain* that evidence of the possession of child pornography would be found on Olson's home computer, but certainty, proof beyond a reasonable doubt, or even proof by a preponderance of the evidence, is not needed for a judicial

8

officer to find probable cause. What is needed is a *fair probability* that evidence of a crime will be found in a particular place. And, as previously stated, I am persuaded that, under the totality of the circumstances, Judge Sickel had a substantial basis for concluding that there was a *fair probability* that agents would find evidence of the possession of child pornography on Olson's home computer. To reiterate, "[i]n dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Kimberlin*, 805 F.2d at 228 (internal quotations omitted).

Additionally, the defendant argues that because Agent Kurkowski's affidavit did not establish that the websites focused primarily on child pornography or prominently displayed child pornography, there can be no probable cause to believe that Olson possessed child pornography. However, simply because a website does not focus *primarily* on child pornography or *prominently* display child pornography, but rather, offers both licit and illicit pornography, it does not follow that there can be no probable cause to believe that a member of a website that features both licit and illicit pornography downloaded the illicit child pornography. Indeed, to accept the defendant's argument, would be to provide a "safe haven" for child pornographers who do not "prominently" display their child pornography, but rather, simply provide illicit pornography on websites that also contain licit pornography. As the court stated in *United States v. Wagers*, another Regpay case, "the issue is not whether th[e] websites have both 'legal' and 'illegal' pages to access. . . . [T]he issue is whether there is 'probable cause' to believe that evidence, fruits or instrumentalities of criminal activity may be found at the suspect premises." 339 F.Supp.2d 934, 940 (E.D. Ky. 2004). In any event, even if the websites at issue contained licit as well as illicit pornography, based upon the agents' descriptions

9

of the images downloaded from the websites, it is evident that, at least in July of 2003, the websites contained extensive collections of child pornography.

Furthermore, the defendant argues that although the names of the websites (allxboys.com, erectxboys.com, and sunshine-boys.com) contain the term "boy," the names do not clearly and unequivocally announce that the websites contain child pornography. This is because, at least in the sex industry, the word "boy" connotes males generally, not pre-pubescent males. The defendant also notes that the names of the websites did not include any modifier indicating that the depicted males were minors, and thus, the defendant argues that the websites may have simply featured adult pornography when the defendant was a member. On the other hand, the government argues that the word "boy" is most often understood as describing "a male child from birth to puberty," and accordingly, the names of the websites are probative of their illicit content. (Gov't's Br. at 6-7 n.3.)

I agree with the defendant that the usage of the word "boy" in the names of the websites does not *clearly* and *unequivocally* announce that the websites contain child pornography. However, simply because the names of the websites do not explicitly state that they contain illicit content, it does not follow that it cannot be reasonably inferred, given the totality of the circumstances, that the websites did in fact contain child pornography. The inclusion of a modifier in the name of a pornographic website indicating that the depicted males or females are underage is not needed to reasonably conclude that a particular website contains child pornography. In *United States v. Wagers*, another Regpay case, the names of the child pornography websites, that is, redlagoon.com, darkfeeling.com, and video2000.com, were quite simply completely innocuous. 452 F.3d 534, 538 (6th Cir. 2006). Thus, despite the fact that the names of the websites at issue in this case do not clearly and unequivocally announce their illicit content, I cannot say that it was unreasonable for

10

Judge Sickel to conclude that there was a fair probability that evidence of Olson's possession of child pornography would be found on his home computer.

To reiterate, it is possible that when Olson became a member of allxboys.com and erectxboys.com, those websites only contained adult pornography. However, Agent Kurkowski's affidavit establishes that eight months after Olson became a member of allxboys.com and erectxboys.com in November of 2002, agents obtained memberships to those websites and confirmed that those websites "contained *extensive* collections of sexually explicit photographic and video images of what appear to be real children posing and/or engaged in pornographic activities with other children." (Def.'s Mot., Kurkowski Aff. at ¶ 25.) (emphasis added) And, as previously stated, a reasonable inference to be drawn from this fact is that the websites contained child pornography when Olson was a member of the websites eight months prior to the agents' review of the contents of the websites. This is so, especially given the reasonable inference that if a website's contents were to change so drastically, so too would the website's name or URL.

Finally, the defendant argues that the length of time between Olson's purchase of the website memberships to allxboys.com and erectxboys.com in October and November of 2002 and the government's acquisition of information about the content of those websites in late July of 2003 defeats Judge Sickel's finding of probable cause. The parties dispute whether the court should consider the length of time between Olson's purchase of the website memberships or when Olson's website memberships lapsed a month later. However, even starting from the date when Olson obtained the website memberships (again, excluding Olson's first membership to allxboys.com), the length of time between Olson's purchase of membership and when government agents viewed child pornography on the websites was eight (8) or nine (9) months.

11

Relying upon a statement made in dicta in *Wagers*, the defendant argues that a judicial officer cannot find probable cause if the interval of time between the defendant's purchase of membership in the allegedly illicit website and when child pornography is discovered on the website exceeds five (5) months. To be sure, in *Wagers*, the court stated that an interval of five months was "perhaps more tenuous" than a much shorter interval. 452 F.3d at 538. However, I cannot say, especially considering the totality of the circumstances, that the eight (8) or nine (9) month interval between Olson's purchase of the website memberships and the discovery of "extensive" collections of child pornography on those websites defeats Judge Sickel's finding of probable cause.

Simply put, giving Magistrate Judge Sickel the great deference required by the Supreme Court, probable cause existed for the issuance of the search warrant. *Leon*, 468 U.S. at 914. Indeed, I cannot say that Judge Sickel's determination that probable cause existed to support the issuance of the search warrant was clearly erroneous. *See Pless*, 982 F.2d at 1124. (stating that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error"). As the Supreme Court has held, the magistrate judge's responsibility in examining the challenged search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (emphasis added). Judge Sickel found that the facts alleged in Agent Kurkowski's affidavit lead to a "practical, common sense decision" that there was a "fair probability" that evidence of Olson's possession of child pornography would be found in his home or on his home computer. In sum, I am satisfied that Judge Sickel had a substantial basis for so finding.

12

**B. Staleness**

Olson's next argument is that there existed no probable cause for issuance of the search warrant because the information provided in the affidavit in support of the search warrant was stale. This is so, according to Olson, because the inculpatory information alleged in the affidavit concerned Olson's conduct in 2002, and "such 2002 conduct would be too old for the warrant to issue in 2004." (Def.'s Br. at 13.) The government argues that the inculpatory information provided in the affidavit was not stale because "staleness" in the "context of child pornography presents a special case because 'individuals involved in the collection and distribution of child pornography often . . . maintain their collections for many years.'" (Gov't's Br. at 9-10) (quoting Def.'s Mot., Kurkowski Aff.).

Age, or "staleness," is one piece of information that a judicial officer must consider when making a probable cause determination. "When considering whether information is stale, [the Seventh Circuit] has held 'that the age of inculpatory information is only one factor that magistrates should consider in determining whether probable cause exists, and if other factors indicate that the information is reliable the magistrate should not hesitate to issue the warrant.'" *Newsom*, 402 F.3d at 782-83 (quoting *Spry*, 190 F.3d at 836) (citations omitted). In other words, the age of the information is one matter that the judicial official must consider in making the overall common-sense determination of whether it is probable that contraband or evidence of a crime will be found in a particular place.

To begin, I reiterate that my review of Magistrate Judge Sickel's probable cause determination is limited. Furthermore, given the standard of review, I am persuaded that the passage of twenty-two (22) months between the time Olson purchased memberships in allxboys.com and erectxboys.com, and the issuance of the warrant, was not so long that it could no longer be said that

13

there was a "fair probability" that evidence of Olson's alleged possession of child pornography would be found at his home or on his home computer. This is because, if Olson was a member of a website which contained an extensive collection of child pornography in November of 2002, and as I have already concluded, it was reasonable for Judge Sickel to credit this inference, then there was a "fair probability" that Olson downloaded child pornography when he was a member of those websites and that evidence of Olson's possession of child pornography would still be on Olson's computer in September of 2004.

As Agent Kurkowski stated in his affidavit, "[b]ased [upon his] training, experience, and discussions with other law enforcement officers involved in the investigation of child pornography, [he] know[s] that individuals involved in child pornography keep and collect items containing child pornography over long periods of time." (Def.'s Mot., Kurkowski Aff. at ¶ 15.) Furthermore, the affidavit established that during a recent three-month period (April 17, 2004 to July 31, 2004), Olson accessed the internet 630 times from his home computer. (Def.'s Mot., Kurkowski Aff. at ¶¶ 39-41.) Of course, the high volume of internet traffic on Olson's home computer could be explained by any number of reasons. Even so, I cannot say that, given the nature of the offense at issue, it was unreasonable for the law enforcement agents and subsequently, Magistrate Judge Sickel, "to regard [Olson's high rate of internet use] as an ominous hint of what might be found [on Olson's home computer]." *Newsom*, 402 F.3d at 783. Indeed, it was clear from the totality of the evidence presented in Agent Kurkowski's affidavit that the law enforcement agents believed that, given the reasonable inference that the websites were of the same nature when Olson was a member, Olson probably still had either the twenty-two (22) month old images of child pornography or something similar on his home computer.

14

Moreover, although twenty-two (22) months passed between the time Olson purchased memberships in the websites (that is, allxboys.com and erectxboys.com) and the issuance of the warrant, the agents did not discover the "extensive" collections of child pornography on those websites until July and August of 2003. Accordingly, only thirteen (13) or fourteen (14) months passed between the time when the agents discovered the nature of the websites and the issuance of the warrant.

The Seventh Circuit has recently stated that "[i]nformation a year old is not necessarily stale as a matter of law, especially where child pornography is concerned." *Newsom*, 402 F.3d at 783; *see also United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes"). Indeed,

> [t]he observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret[e] them in secure places, like a private residence. This proposition is not novel in either state or federal court . . . child pornography collectors maintain their materials for significant periods of time.

*United States v. Lamb*, 945 F.Supp. 441, 460 (N.D.N.Y. 1996) (collecting cases); *see also United States v. Ricciardelli*, 998 F.2d 8, 12 n.4 (1st Cir. 1993) (stating that "history teaches that [child pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years").

15

Moreover, when determining whether information is stale, the judicial officer must not only consider the age of the information, but the nature of the evidence sought. To be sure, some types of evidence are more evanescent than others. Some contraband, like narcotic drugs, are consumable. Other evidence, like child pornography, is more apt to remain in one place for extended periods of time. *Lamb*, 945 F.Supp. at 460. "Thus, in contrast to theft or robbery cases where the evidence would be expected to be moved fairly rapidly, and in contrast to drug cases where the evidence would likely have been sold or consumed in [twenty-two (22) months], the types of material involved here would be more likely to be retained." *State v. Woodcock*, 407 N.W.2d 603, 605 (Iowa 1987). Indeed, with respect to the possession of child pornography, "the perceived usefulness of the material to the suspect would be of a continuing nature." *Id.* Accordingly, when viewed in light of the nature of the items sought and giving deference to the judgment of Judge Sickel, I am persuaded that probable cause was established.

Finally, I must note that in cases where the question of probable cause is close (and indeed this case is one of them), the Supreme Court has held that resolution of the issue is "largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Indeed, in *Ventresca*, the Supreme Court stated that "the resolution of doubtful or marginal cases in this area [probable cause] should be largely determined by the preference to be accorded to warrants." *Id.* Such being the case, and for all of the foregoing reasons, I am not persuaded that Magistrate Judge Sickel committed clear error in issuing the search warrant for Olson's residence and home computer. To the contrary, for the reasons set forth above, in my opinion, "based on the totality of circumstances, the affidavit set[] forth sufficient evidence to induce

16

a reasonably prudent person to believe that a search [would] uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2004).

## C. Alleged *Franks* Violation

Olson next argues that the search warrant was invalid because Agent Kurkowski's affidavit "recklessly omitted facts material to the finding of probable cause." (Def.'s Br. at 14.) Olson requested that this court conduct an evidentiary hearing on the matter, a request that, for the following reasons, will be denied.

In certain circumstances a defendant can challenge a facially sufficient warrant based on the falsity of the affidavit in support of the warrant. However, in order to successfully do so, the defendant must establish that the affidavit contains "deliberate falsehood or . . . reckless disregard for the truth," attributable to the affiant, and that without the false material probable cause would not have existed. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Moreover, before a court must conduct an evidentiary hearing on the matter, the defendant must make allegations, accompanied by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. Furthermore, to prove reckless disregard for the truth, the defendant must prove that the affiant "'in fact entertained serious doubts as to the truth of his allegations,'" or at least that there existed "circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)).

Here, the alleged "reckless disregard for the truth" is solely based on alleged omissions made by the law enforcement agents, rather than alleged false statements contained in the affidavit. The defendant argues that the law enforcement agents recklessly omitted the following facts from the

affidavit: (1) that agents had no factual reasons to believe that Olson was a child pornographer; and (2) that agents had failed to establish that the websites had contained any child pornography in 2002, when Olson was a member, or that Olson had viewed or downloaded any child pornography from those sites.[1] (Def.'s Br. at 14-15.)  The defendant further argues that these recklessly omitted facts were material to the finding of probable cause, that is, if the affidavit included these facts Judge Sickel would not have found probable cause.  (Def.'s Br. at 14.)

As previously stated, however, before a court must conduct an evidentiary hearing on an alleged *Franks* violation, the defendant must make allegations, accompanied by an offer of proof, that are "more than [simply] conclusory" allegations.  *Franks*, 438 U.S. at 171.  And here, the only allegations the defendant has made are conclusory.  Such being the case, the defendant's request for an evidentiary hearing will be denied.  Furthermore, the defendant has offered no evidence that would tend to show that any of the alleged omissions made by the agents were made either deliberately or with reckless disregard for the truth. *United States v. Kimberlin*, 805 F.2d 210, 252 (7th Cir.1986).  Therefore, Olson has failed to carry his burden of establishing that the alleged omissions were either made deliberately or with reckless disregard for the truth.

**D.  "Good Faith" Exception**

As previously stated, I have determined that the search warrant issued in this case was supported by probable cause.  In my opinion, however, this is a case where the question of probable

---

[1]  In his reply brief, the defendant appears to argue that the law enforcement agents recklessly omitted facts regarding the prevalence of "Trojans," and "mouse-trapping" in the sex industry, that is, particular ways in which  individuals who visit websites featuring adult pornography may unintentionally receive child pornography.  However, because these arguments were raised for the first time in his reply brief, they will not be considered.

cause was close. Such being the case, I will also address whether, even if the search warrant was not supported by probable cause, the good faith exception applies. *See United States v. Leon*, 468 U.S. 897 (1984). *Leon* applies to a situation where a warrant was not supported by probable cause, but the executing officers proceeded in good faith reliance on what they believed to be a valid warrant. The government argues that, even if the search warrant was not supported by probable cause, the agents acted in objective good faith in executing the warrant, so that the motion to suppress should nonetheless be denied pursuant to *Leon*.

> In most cases [where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope], there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.

*Leon*, 468 U.S. at 920-21 (citation and internal punctuation omitted).

Turning to the facts of this case, even if the search warrant was not supported by probable cause, it would be saved by the good faith exception.

> An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith. A defendant may rebut this prima facie case by presenting evidence establishing either that: (1) the warrant issuing officer "wholly abandoned his judicial role" and failed to "perform his neutral and detached function," serving "merely as a rubber stamp for the police"; or (2) the affidavit submitted in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) (internal quotations and citations omitted).

The defendant does not suggest, and nor could I find that Magistrate Judge Sickel "wholly abandoned his judicial role" in this case and failed to "perform his neutral and detached function."

19

*Id.* Rather, it appears as though the defendant is arguing that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* However, as previously stated, I have already found that the warrant was supported by probable cause. Yet, even assuming the warrant was not supported by probable cause, "sufficient indicia of suspicion were present in the affidavit to invoke the good faith exception." *Id.* Specifically, the affidavit established that (1) in the latter part of 2002, Olson purchased month-long memberships in websites which, eight months later, were determined to contain extensive collections of child pornography; (2) during a recent three-month period, Olson accessed the internet 630 times from his home computer; and (3) based upon the affiant's experience, he believed that individuals who collect child pornography keep and collect items containing child pornography over long periods of time. (*See* Kurkowski Aff.) "Equipped with these assertions, the affidavit in support of the warrant to search Olson's [home and home computer] was not so lacking in indicia of probable cause as to render reliance upon it unreasonable." *Olson*, 408 F.3d at 372.

In conclusion, and for all of the foregoing reasons, it will be recommended that the defendant's motion to suppress be **DENIED**.

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress be **DENIED**;

**IT IS HEREBY ORDERED** that the defendant's request for an evidentiary hearing be and hereby is **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service

of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

        **SO ORDERED** this <u>31st</u> day of August, 2006, at Milwaukee, Wisconsin.


<u>/s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

Case 2:06-cr-00065-RTR   Filed 08/31/06   Page 21 of 21   Document 19